**BROMENN HEALTHCARE, an Illinois Corporation, as Sponsor of Bromenn Healthcare Employees' Group Medical Dental Plan, Plaintiff,**

v.

**NORTHWESTERN NATIONAL LIFE INSURANCE COMPANY, a Minnesota Corp., and Self Assurance Company, an Illinois Corp., Defendant.**

No. 92–1033.

United States District Court, C.D. Illinois.

Nov. 13, 1992.

Jeanne L. Wysocki, Quinn Johnston Henderson & Pretorius, Peoria, Ill., for plaintiff.

William G. Beatty, Johnson & Bell, Ltd., and William A. Chittenden III, Peterson & Ross, Chicago, Ill., for defendant.

## ORDER

MIHM, Chief Judge.

This Cause is before the Court on the motion of Plaintiff Bromenn Healthcare [Bromenn], as sponsor of Bromenn Healthcare Employees' Group Medical/Dental Plan [Plan], to remand this case to the Circuit Court of the Eleventh Judicial Circuit, McLean County, Illinois, following removal by Defendants, Northwestern National Life Insurance Company [Northwestern] and Self Assurance Company [Self Assurance]. Also pending before the Court is the motion of Defendant Northwestern to dismiss Count I of Bromenn's

complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and the motion of Plaintiff Bromenn to strike Self Assurance's second affirmative defense. For the reasons set forth below, the Motion to Remand is *GRANTED*, the Motion to Dismiss and the Motion to Strike are *DENIED* as moot.

## BACKGROUND

On November 27, 1992, Bromenn filed a two count complaint in state court against Northwestern and Self Assurance Company. Count I alleges a breach of contract claim against Northwestern for refusing to reimburse the Plan fund pursuant to its obligations under a subscription agreement between Northwestern and Bromenn for excess risk insurance coverage. Count II alleges a breach of contract claim against Self Assurance for making or approving unacceptable Plan benefit payments. The claim against Self Assurance is premised upon an administrative services agreement between Bromenn and Self Assurance.

The Plan is a self-funded employee welfare benefit plan as defined and governed by ERISA. Bromenn sponsors the Plan for the benefit of Brokaw and Mennonite hospital employees. On October 1, 1988, Bromenn, as plan sponsor, entered into a Subscription Agreement for Excess Risk Insurance with Northwestern. Pursuant to that agreement, Northwestern agreed to pay benefits to the Plan in the amount that the eligible risk expenses paid by the Plan exceeded the Aggregate Stop Loss Deductible. The Subscription Agreement set forth a formula establishing the Aggregate Stop Loss Deductible at two million two thousand five hundred thirty eight and 76/100 dollars ($2,002,538.76). Bromenn contends that the Plan paid out benefit expenses amounting to two million seven hundred forty nine thousand six hundred twenty nine and 27/100 dollars ($2,749,629.27) during the policy period.

On October 30, 1989, Bromenn presented to Northwestern a claim for reimbursement in the amount of six hundred ninety two thousand six hundred and 97/100 ($692,600.97). Northwestern refused to reimburse the Plan and subsequently conducted an audit of Self Assurance, the Plan Administrator. Northwestern also retained the Equifax Service Company to conduct an audit of the Brokaw and Mennonite Hospitals' records. Brokaw contends that during the course of the Equifax audit, Equifax refused offered and necessary assistance from Bromenn employees. Northwestern asserts that the audits show the total amount of claims paid from the Plan did not exceed the stop loss deductible figure.

Subsequently, Bromenn conducted an internal audit to support its reimbursements claim to Northwestern. As a result of that audit, Bromenn voluntarily reduced the reimbursement claim to six hundred seventy one thousand one hundred ninety one and 00/100 dollars ($671,191.00). Northwestern still refused to reimburse the Plan.

On October 1, 1988, Bromenn also entered into an Administrative Services Agreement with Self Assurance. Pursuant to that agreement, Self Assurance agreed to administer the Plan in accordance with the terms of the Plan document. Bromenn alleges that Self Assurance breached the Administrative agreement by failing to properly calculate amounts due and payable and failing to promptly process claims in accordance with Plan terms. Bromenn seeks contractual indemnification from Self Assurance for the amount allegedly overpaid in benefit claims from the Plan to participants and beneficiaries.

On January 2, 1992, Northwestern, joined by Self Assurance, removed this action to federal court pursuant to provisions 28 U.S.C. §§ 1331, 1441 and 29 U.S.C. § 1132. On January 31, 1992, Bromenn moved for remand back to state court for lack of subject matter jurisdiction by this Court. On February 24, 1992, Northwestern moved to dismiss Count I of Bromenn's complaint pursuant to Rule 12(b)(6). On February 27, 1992, Bromenn moved to strike Self Assurance's Second Affirmative Defense.

On July 6, 1992, the Magistrate recommended the Motion to Remand be denied, the Motion to Dismiss be denied, and the

Motion to Strike be granted. This Court heard oral argument on September 11, 1992. Following argument, the Court orally granted Bromenn's Motion to Strike, granted Northwestern's Motion to Dismiss Count I with leave to amend, and denied Bromenn's Motion to Remand. The Court based the decision to deny remand on a finding that Plaintiff Bromenn and at least one defendant, specifically Self Assurance, was an ERISA fiduciary. Subsequently, Northwestern, Self Assurance and Bromenn filed proposed findings, proposed orders and responses bringing to question the Court's finding on the issues of preemption and, particularly, fiduciary status. As a result, the Court again heard oral argument on October 8, 1992, and granted leave to all parties an opportunity to brief the issue of fiduciary status.

Based on these arguments and the briefs now submitted, the Court reconsiders and withdraws the holding of September 11, 1992, and *GRANTS* Bromenn's Motion to Remand. The Court's reasoning and findings are discussed below.

## DISCUSSION

ERISA governs the self-funded employee welfare benefit plan involved in this case. Congress created ERISA to "protect ... the interests of participants in employee benefit plans and their beneficiaries, ... by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts." 29 U.S.C. § 1001(b). ERISA comprehensively regulates " 'employee welfare benefit plan[s]' ... established or maintained by an employer ... for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, ... medical, surgical, or hospital care or benefits, ..." 29 U.S.C. § 1002(1). In determining whether ERISA's broad purpose and comprehensive scope covers the parties involved and the claims raised in this case for removal purposes, the Court must examine both the issues of preemption and jurisdiction.

## PREEMPTION

■ The Court must first determine whether the state law claims raised by Bromenn are substantively preempted by ERISA. ERISA includes three provisions relating to the preemptive effects of the statute, the preemption, saving, and deemer clauses. If a state law claim "relate[s] to ... employee benefit plan[s]," it is preempted. 29 U.S.C. § 1144(a). The savings clause excepts state laws that "regulat[e] insurance" from the preemption clause. 29 U.S.C. § 1144(b)(2)(A). The deemer clause denotes that a state law "purport[ing] to regulate insurance" cannot deem an employee benefit plan to be an insurance company. 29 U.S.C. § 1144(b)(2)(B); *See also Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987).

Whether a certain state action is preempted by a federal law is a question of congressional intent. *Pilot Life,* 481 U.S. at 45, 107 S.Ct. at 1552. Originally the preemption provisions of the ERISA bill were limited only to state laws relating to the specific subjects covered by ERISA. The Conference Committee, however, rejected the limited provisions for the present language and "indicated that the section's pre-emptive scope was as broad as its language." *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 98, 103 S.Ct. 2890, 2900-01, 77 L.Ed.2d 490 (1983) *citing* H.R.Conf.Rep. No. 93–1280, p. 383 (1974); S.Conf.Rep. No. 93–1090, p. 383 (1974), U.S.Code Cong. & Admin.News 1974, P. 4639. The Supreme Court has held that "the pre-emption clause is not limited to 'state laws specifically designed to affect employee benefit plans.' " *Pilot Life,* 481 U.S. at 47–48, 107 S.Ct. at 1553 *quoting Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 98, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983).

The ERISA statute "supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). A state law "relates to" an employee benefit plan if it has connection with or reference to such a plan. *Shaw,* 463 U.S. at 96–96, 103 S.Ct. at

2899–2900; *Bartholet v. Reishauer A.G.,* 953 F.2d 1073, 1075 (7th Cir.1992) ("Relates to" has been read expansively). The statute's preemption provision is to be broadly construed and extends to state common law tort and contract claims. *Pilot Life,* 481 U.S. at 48, 107 S.Ct. at 1553. Even state law claims which do not specifically pertain to employee benefit plans are preempted if the claims arise directly or indirectly from the administration of such plans. *Gibson v. Prudential Ins. Co.,* 915 F.2d 414, 416 (9th Cir.1990).

Count I of this action alleges a breach of contract claim against Northwestern for refusing to reimburse the Plan for funds paid out in benefits which exceeded the Aggregate Stop Loss Deductible figure. Count II alleges a breach of contract claim against Self Assurance for negligently failing to administer Plan benefit claims in accordance with the terms of the Plan. In both Counts, the Plan is the hub from which Bromenn's claims arise. Bromenn alleges that a sum .certain exceeding the Stop Loss Deductible was paid from Plan funds and is owing to the Plan. All the wrongful conduct alleged in this complaint stems from either a Defendant allegedly removing too much money from the Plan or a Defendant allegedly refusing to contribute enough money into the Plan. If these allegations are proven, that sum is either owed into the Plan fund by Northwestern as the Stop Loss excess insurance carrier or owed into the Plan fund by Self Assurance for failure to administer the Plan in accordance with Plan terms. In either event, the integrity of the Plan itself will be affected by the outcome of this case. These disputes involve interpretation of the provisional terms of an ERISA benefit plan making the claims raised inextricably intertwined with consideration to the Plan. For these reasons, the Court finds that both of the claims raised here "relate to" this employee welfare benefit plan and are preempted by ERISA.

### JURISDICTION

■ ERISA preemption, on its own, cannot be the sole basis of the original federal jurisdiction necessary for removal to federal court. *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 65, 107 S.Ct. 1542, 1547, 95 L.Ed.2d 55 (1987); *Lister v. Stark,* 890 F.2d 941, 943 (7th Cir.1989). A district court must remand a removed case "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, ..." 28 U.S.C. § 1447(c). "Federal jurisdiction is a creature of statute." *Winstead v. J.C. Penney Co.,* 933 F.2d 576, 578 (7th Cir.1991). A claim arising under federal law may be litigable only in a state court unless Congress conferred federal jurisdiction. *Winstead,* 933 F.2d at 578. Thus, before this Court can properly retain this action, subject matter jurisdiction must be established.

■ The burden of establishing federal jurisdiction rests with the party seeking removal of the action to district court. *Jones v. General Tire & Rubber Co.,* 541 F.2d 660, 664 (7th Cir.1976); *Commonwealth Edison Co. v. Westinghouse Electric Co.,* 759 F.Supp. 449 (N.D.Ill.1991). The Defendants removed this action based on both the jurisdictional provision within ERISA, 29 U.S.C. § 1132(e), and the general federal question jurisdictional statute, 28 U.S.C. § 1331. Bromenn argues that subject matter jurisdiction cannot be established under either of these statutes.

### ERISA JURISDICTION

■ ERISA's jurisdictional provision provides in relevant part that federal district courts "shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, or fiduciary." 29 U.S.C. § 1132(e)(1). Bromenn contends that as the plan sponsor it is not a fiduciary for purposes of these claims. ERISA defines a person as a "fiduciary" with respect to a plan to the extent:

(i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets ..., or (iii) he has any discretionary authority or discretionary responsibility in adminis-

tration of such plan. Such term includes any person designated under section 1105(c)(1)(B) of this title.

29 U.S.C. § 1002(21)(A)

Whether Bromenn falls within this definition necessarily depends upon the possession of discretionary control or actual authority. The key language in the statutory definition is that a person is a fiduciary "to the extent" he exercises control or authority over the plan. *Sandoval v. Simmons*, 622 F.Supp. 1174, 1211 (C.D.Ill.1985) *citing Leigh, Dusek, Johnson v. Engle*, 727 F.2d 113, 133 (7th Cir.1984); *see also, Ed Miniat, Inc. v. Globe Life Ins. Group, Inc.*, 805 F.2d 732 (7th Cir.1986), *cert. denied*, 482 U.S. 915, 107 S.Ct. 3188, 96 L.Ed.2d 676 (1987) (corporate employers with power to amend the plan, select insurance carrier, and select plan administrator are fiduciaries within meaning of ERISA); and *Ampere Automotive Corp v. Employee Benefit Plans, Inc, and EBF Life Insurance Co.*, slip op. # 92–2580, 1992 WL 220912 (N.D.Ill. Aug. 31, 1992) (plan sponsor and even a plan is a fiduciary when duties and responsibilities include processing claims, conducting audits, reviewing applications for coverage, or determining eligibility for plan membership).

Perusal of the pleadings reveal that Bromenn has sufficient discretionary control and actual authority to confer fiduciary status. Bromenn has the authority to enter into contracts on behalf of the Plan, delegate authority for Plan administration, and determine who shall provide insurance coverage. Bromenn also has the authority to conduct audits concerning the Plan's administration. Moreover, under the Summary Plan Description, Bromenn reserved to itself the authority to terminate, modify, amend or change the Plan. Bromenn could certainly be open to liability pursuant to 29 U.S.C. §§ 1104–09 as a fiduciary based on the control and authority just described. Therefore, this same control and authority also confers fiduciary status upon Bromenn to sue under ERISA.

■ Bromenn argues next that ERISA provides no civil action under subchapter II for the claims raised, and therefore,

ERISA's section 1132(e) precludes a finding of subject matter jurisdiction. As a fiduciary, ERISA entitles Bromenn to bring a civil action pursuant to sections 1132(a)(2) or 1132(a)(3) of the Act. Section 1132(a)(2) empowers a fiduciary to bring action against a co-fiduciary pursuant to section 1109. For Bromenn to state a cause of action under section 1132(a)(2), at least one of the Defendants must not only be a fiduciary generally, one Defendant must have had fiduciary responsibilities with regard to the specific issue raised in Bromenn's claim. *See Landry v. Air Line Pilots Ass'n Int'l*, 901 F.2d 404, 417 (5th Cir.), *cert. denied*, 498 U.S. 895, 111 S.Ct. 244, 112 L.Ed.2d 203 (1990) and *Brandt v. Grounds*, 687 F.2d 895, 897 (7th Cir.1982).

On September 11, 1992, the Court originally held that subject matter jurisdiction existed based on a finding that Self Assurance was a Plan fiduciary. With the benefit of receiving a copy of the Administrative Services Agreement between Self Assurance and Bromenn and the parties' briefing on the issue of fiduciary status following oral argument, the Court now withdraws the September finding of Self Assurance's fiduciary status.

The Court based its previous decision on the pleadings as supporting a finding that Self Assurance held the requisite authority and control sufficient to confer fiduciary status. Under section 1105(c), Bromenn, as plan sponsor, plan administrator, and plan fiduciary had the power under ERISA and pursuant to the Plan Document to allocate fiduciary responsibilities and, with those responsibilities, liabilities. The Administrative Services Agreement, however in section 4, indicates that Self Assurance shall not be deemed the Administrator of the Plan for purposes of ERISA. Moreover, the other Agreement provisions support this provision by only conferring certain ministerial tasks to Self Assurance and retaining the discretionary authority and control in Bromenn. As defined by ERISA, Bromenn exclusively holds the authority of Plan Administrator and Plan Sponsor. 29 U.S.C. § 1002(16)(A) & (16)(B).

The issue of whether Northwestern qualifies as a fiduciary under ERISA turns on whether the reimbursement of money allegedly owed in Count I can properly be characterized as funds belonging to the Plan. In other words, does the retention of monies allegedly owed to the Plan fund constitute Plan assets that touch an essential fiduciary duty owed to the Plan, participants, or beneficiaries. Northwestern otherwise has no discretionary authority or control with regard to the Plan. The pleadings reveal that Northwestern's authority outside of the money allegedly owed was limited to the auditing of the Plan Administrator's and the Brokaw and Mennonite Hospitals' records as the records related to the Plan. This nexus between Northwestern and the Plan is too tenuous to confer fiduciary status. Northwestern must have had control or authority over Plan assets.

A regulation promulgated under the Department of Labor's delegated statutory authority under ERISA sections 1031, 1133 and 1135 provides guidelines in determining when funds belong to a plan for ERISA bonding purposes. It provides that "[w]here the employer or employee organization establishing the plan is itself the plan administrator: ... Contributions made to a plan by such employer or employee organization ... become "funds" ... of the plan if and when ... segregated." 29 C.F.R. § 2580.412–5(b)(2) (1991). Funds are segregated when taken out of general assets, placed in separate accounts, paid over to the trustee or identified on a separate set of books. 29 C.F.R. § 2580.-412–5(b)(2). These guidelines similarly apply when an insurance carrier serves as the medium for benefits. 29 C.F.R. § 2580.-412–5(b)(2). This regulation was properly promulgated and would seem to be a binding legislative rule. It also seems consistent with the Statute in that a plan itself shall specify the basis by which contributions are made to and from the plan thereby constituting plan assets. 29 U.S.C. § 1102(b).

Northwestern, as the excess risk insurer, controls only its own assets, not the assets constituting Plan funds. A mere contractual relationship with the plan sponsor will not transform an insurance company into an ERISA fiduciary unless at some point that insurer exercises some control or authority over the Plan, participants, or beneficiaries. If the Subscription Agreement provided that Northwestern paid the actual benefits as opposed to reimbursing the Plan for benefits actually paid, this finding might be different. The contract between Northwestern and Bromenn, however, did not establish the Plan, affect benefits paid from the Plan, affect eligibility, or touch any other cognizable duty owed to the Plan, participants, or beneficiaries. Therefore, Northwestern fails to satisfy the requisites of an ERISA fiduciary.

Based on the finding that neither Self Assurance nor Northwestern are fiduciaries, the Court finds no basis supporting a civil action under section 1132(a)(2) for Bromenn. Furthermore, Bromenn's claims do not allege an action under section 1132(a)(3). Section 1132(a)(3) empowers Bromenn to enjoin any act or practice which violates ERISA or the terms of the Plan. This enforcement provision is simply not applicable to the damages sought by Bromenn in this case.

## FEDERAL QUESTION JURISDICTION

When a claim does not come within ERISA's grant of federal jurisdiction, 29 U.S.C. § 1132, the claim may fall within the general federal question jurisdictional statute, 28 U.S.C. § 1331. *See generally Winstead v. J.C. Penney Co., Inc.,* 933 F.2d 576 (7th Cir.1991) and *Dugan v. Nickla,* 763 F.Supp. 981 (N.D.Ill.1991). Federal question jurisdiction requires that the case arise "under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. A cause of action arises under the laws of the United State only when a *plaintiff's* well-pleaded complaint raises a federal issue on its face. *Franchise Tax Bd. v. Construction Laborers Vacation Trust,* 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). In a case where preemption is raised as a defense to the plaintiff's claim, the requisite federal issue does not appear on the face of the plaintiff's complaint for removal purposes. A preemption defense,

therefore, cannot establish the original federal jurisdiction necessary for removal to federal court. *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987); *Lister v. Stark,* 890 F.2d 941, 943 (7th Cir.1989). The Supreme Court, however, recognizes an exception to the "well-pleaded complaint" rule where Congress has "completely preempted" a given area of state law. *Metropolitan Life,* 481 U.S. at 63, 107 S.Ct. at 1546. The doctrine of complete preemption enables the Court to recharacterize a plaintiff's state law claim into a federal claim making removal appropriate. *Lister,* 890 F.2d at 943. Whether a claim has been completely preempted is a determination of congressional intent. *Metropolitan Life,* 481 U.S. at 66, 107 S.Ct. at 1547–1548; *Lister,* 890 F.2d at 943.

The doctrine of complete preemption is a federal jurisdictional doctrine, not a substantive preemptive doctrine. *See Lister,* 890 F.2d at 943 n. 1. If the jurisdictional basis for removal is founded on a preemption defense and complete preemption cannot be established, the case must be remanded to state court. *Lister,* 890 F.2d at 943 n. 1, n. 5. As noted in *Lister,* the decision to remand under such circumstances will not preclude the state court from applying federal law to substantively preempted state law claims in resolving the dispute. *Lister,* 890 F.2d at 943 n. 1.

The Supreme Court and the Seventh Circuit hold that Congress intended "to make all suits that are cognizable under ERISA's civil enforcement provisions federal question suits." *Lister,* 890 F.2d at 943–944; *Metropolitan Life,* 481 U.S. at 66, 107 S.Ct. at 1547–48. This requires an analysis of 29 U.S.C. § 1132(a) to determine whether the facts pled by the plaintiff state a cause of action under ERISA's civil remedy provisions. *Metropolitan Life,* 481 U.S. at 63–64, 107 S.Ct. at 1546–47. Therefore, a federal court has subject matter jurisdiction over any state law claim cognizable under 29 U.S.C. § 1132(a) pursuant to the doctrine of complete preemption. Beyond this limitation, the Seventh Circuit fails to acknowledge removal jurisdiction for ERISA actions removed under the general federal question jurisdiction.

■ Bromenn's state law claims are not completely preempted for jurisdictional purposes unless they fall within the scope of ERISA's inclusive civil enforcement provisions. *Cf. Franchise Tax* and *Allstate Ins. Co. v. 65 Secur. Plan,* 879 F.2d 90 (3rd Cir.1989) *with Metropolitan Life, Pilot Life,* and *Lister.* Based on the September 11, 1992, finding that Self Assurance was a fiduciary, this Court held that Bromenn pled a cognizable claim under ERISA's civil enforcement provisions, thereby conferring subject matter jurisdiction under 28 U.S.C. § 1331. Because the Court is now convinced that fiduciary status does not exist for either Defendant, the Court reconsiders and withdraws its earlier holding.

The Defendants argue that a determination of subject matter jurisdiction does not require a finding of fiduciary status. While this may be true in cases involving actions brought by the Secretary, participants, or beneficiaries, or in cases seeking equitable relief, the only cognizable ERISA civil remedy available in this case based on the juxtaposition of the parties involved, the claims alleged, and the relief sought falls under section 1132(a)(2), breach of fiduciary duty. ERISA enforcement provision 1132(a)(2) necessarily requires the defendant be an ERISA fiduciary. 29 U.S.C. §§ 1132(a)(2) and 1109.

Furthermore, the cases cited by the Defendants which involve subject matter jurisdiction in the removal context are not inconsistent with this Court's holding. *Metropolitan Life* (Former employee's state law claim displaced by section 1132(a)(1)(B) therefore satisfies the "arises under" language of 28 U.S.C. § 1331); *Pilot Life* (held employee's common law breach of contract and tort claims fell under ERISA's civil enforcement scheme); *Pohl v. National Benefits Consultants, Inc.,* 956 F.2d 126, 128 (7th Cir.1992) (Court recharacterized the employee/participant's state claim as a claim for ERISA benefits); and *Lister* (removal jurisdiction proper because participant's state claims are cognizable under ERISA's civil forfeiture provisions).

As stated in the prologue to this discussion, the primary purpose of ERISA is to protect the interests of participants and beneficiaries of employee benefit plans through established standards and available remedies. Therefore, ERISA's inclusive civil enforcement provisions understandably provide a broader range of cognizable claims for participants and beneficiaries than for fiduciaries. Had Bromenn been a participant or beneficiary seeking benefits or had either of the Defendants been a fiduciary the results of this Motion would have been different. Moreover, if this cause was brought originally in federal court, as opposed to removed, the Court may have had subject matter jurisdiction under 28 U.S.C. § 1331 for a federal common law claim. *See e.g., Winstead v. J.C. Penney Co., Inc.,* 933 F.2d 576 (7th Cir. 1991) and *Dugan v. Nickla,* 763 F.Supp. 981 (N.D.Ill.1991). For removal purposes, however, the doctrine of complete preemption must be established by the parties seeking removal.

## CONCLUSION

For the reasons stated above, the Court lacks subject matter jurisdiction over these claims and Bromenn's Motion to Remand is GRANTED. The Motions to Dismiss and Strike are DENIED as moot.